482 P.2d 457

**STATE of Arizona, Appellee,**
v.
**Armando Luis LOPEZ, Appellant.**
**No. 2089.**

Supreme Court of Arizona,
In Banc.
March 17, 1971.

Gary K. Nelson, Atty. Gen. by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

UDALL, Justice:

Defendant, Armando Luis Lopez, and a co-defendant, Frank Vega Cano, were tried by jury and convicted of murder in the first degree. Evidence introduced at their joint trial showed that Lopez had assisted Cano in burglarizing a gas station. Shortly after doing so, they returned to retrieve a partially filled bottle of beer which they had inadvertently left behind. It was at this point in time that Officer Nofs arrived on the scene. As he approached the two suspects, he was attacked and disarmed by Cano; who proceeded to beat Officer Nofs mercilessly about the head and neck with a black-jack. Their thirst for violence still unquenched both men then took their turn in shooting the already unconscious and severely injured police officer. They were arrested a short time later.

Following their conviction both men appealed. In State v. Cano, 103 Ariz. 37, 436 P.2d 586 (1968), we affirmed the conviction of Frank Cano but reversed and remanded as to defendant, Armando Lopez. On remand, defendant entered a plea of "guilty" to an amended information charging him with voluntary manslaughter. He thereupon was sentenced to be incarcerated in the Arizona State Prison "for a term not less than five nor more than ten years."

On June 19, 1969, defendant filed a motion in the trial court, in propria persona, seeking an order amending the commencement date of sentence. The basis for this motion was the trial court's alleged failure to allow him credit for time served after his first conviction but prior to sentencing on his subsequent plea of guilt. He maintains that under the sentence, as imposed, he is threatened with a possible fifteen years imprisonment—nearly five years' credit prior to sentencing on his plea of guilt plus another possible ten years' imprisonment following sentencing—when the maximum possible punishment allowed under A.R.S. § 13–457, prior to amendment, was ten years' imprisonment. On October 15, 1969, defendant's motion was denied. From the order denying his motion, defendant prosecutes this appeal.

Before embarking on a determination of the merits of this case we consider it appropriate to note that at the time the alleged offense was committed, the maximum possible sentence for voluntary manslaughter was "imprisonment in the state prison for not to exceed ten years." A.R.S. § 13–457. Such being the case, the Legislature's subsequent amendment of § 13–457, allowing a maximum possible sentence of *life imprisonment where* a person is found guilty of voluntary manslaughter, *committed while armed with a gun or deadly weapon,* is of no consequence in this case. Defendant has a constitutional right to be sentenced under the punishment statute in effect at the time the offense was committed; even though that statute had been amended prior to defendant's entry of a plea of guilty.

On appeal the sole issue, as formulated by defendant, is as follows:

"Was defendant unconstitutionally denied credit for time previously served under his first conviction when the court imposed the maximum sentence on the

second conviction and did not subtract therefrom credit for the previous time served?"

In Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court held that the

"* * * double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment." 395 U.S. at 795, 89 S.Ct. at 2062, 23 L.Ed.2d at 716.

That very same day, in Simpson v. Rice (sub. nom. North Carolina v. Pearce), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court further defined the constitutional guarantee against double jeopardy as consisting of three separate constitutional protections:

"* * * It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. This last protection is what is necessarily implicated in any consideration of the question whether, in the imposition of sentence for the same offense after retrial, the Constitution requires that credit must be given for punishment already endured." 395 U.S. at 717, 89 S. Ct. at 2076, 23 L.Ed.2d at 664–665. [Footnotes omitted]

And in answering this question, the Supreme Court held that

"* * * the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' [13] in imposing sentence upon

13. Such credit must, of course, include the time credited during service of the first prison sentence for good behavior, etc.

a new conviction for the same offense. If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. But if he is reconvicted, those years can and must be returned—by subtracting them from whatever new sentence is imposed." 395 U.S. at 718–719, 89 S.Ct. at 2077, 23 L.Ed.2d at 665–666.

Bearing the foregoing in mind, we now will determine whether the Supreme Court's mandates were not adhered to by the trial court in sentencing defendant. The following statements made during sentencing are crucial in determining the merits of defendant's contention:

"Also, however, I do feel that you have served time. You should have credit for the time you served. *So, I will take into consideration in imposing the sentence the total time you have plus your good time.*

"And I will—it is the judgment of this Court, as I have said, you are guilty of the crime of voluntary manslaughter, a felony. As punishment for this crime, it is ordered that you be sentenced to be incarcerated in the Arizona State Prison at Florence, Arizona, for a term *not less than five years nor more than ten years. The sentence should begin as of this date,* * * *." Transcript of Proceedings at page 5. [Emphasis added]

We agree that the wording of the sentence, as imposed, may be subject to misinterpretation when taken alone, interpreted literally and not viewed in its proper perspective. However, it is quite evident from a careful reading of the above-quoted passage that the court fully intended to credit defendant for time already served. In fact, the court stated plainly and unequivocally that it would take into consideration, in imposing sentence, time already served. That the court might have been more explicit in wording the sentence is not error; especially since the court's meaning is easily established.

The action of the trial court in sentencing defendant to "not less than five nor more than ten years", while bearing in mind the fact that the maximum possible sentence was ten years, can have but one meaning. The court sought to impose an

additional five years to the nearly five years' credit which defendant had already accumulated. The maximum time defendant was to serve, including both the time served prior to sentencing plus the additional five years upon sentencing, was not to exceed ten years.

Having found that the court intended a maximum sentence not to exceed ten years, with the five year sentence to begin as of the date of sentencing, we therefore affirm the judgment and sentence. We find that the mandates of Simpson v. Rice, supra, were observed and no error committed.

STRUCKMEYER, C. J., HAYS, V. C. J., and LOCKWOOD and CAMERON, JJ., concur.